Please be seated. Good morning, everyone. We have four argued cases on the calendar this morning. We have one case on submission, United States v. Allen. And I advise all of you that we'll take that case on submission. I've been advised by the clerk that Counselor is present and ready in each of the cases. So I'm going to dispense with reading the calendar this morning. The first case is Tassy v. Buttigieg. Good morning. I'm Paul Shoemaker. I represent the plaintiff, John Claude Tassy. I need to point out a fact of great importance. Mr. Tassy alleged during the EEO proceeding that a discriminatory incident occurred on July 30, 2018 within the 45-day window prior to his initial contact with an EEO counselor. This fact was overlooked by the district court and has been concealed by the government. Mr. Tassy initially contacted an EEO counselor on August 18, 2018. The agency took statements from Mr. Tassy and others and issued its final agency decision in February of 2020 that starts on page A396 in the record. The decision, the agency decision lists eight claims made by Mr. Tassy. The government asserts that all eight claims are outside of the 45-day window with six of them being more than 45 days before August 18 and two of them purportedly being after August 18. But if you look at page A396, you will see that claim number seven is dated, relates to an incident on July 30, 2018, 19 days prior to August 18, 2018. Thus, one of Mr. Tassy's claims does indeed fall within the 45-day window. The district court failed to note... Is this something that you referenced in your brief and can you tell me what... No, I only noticed it in preparing for the argument that this date is in the record and they have tried to conceal it by stating in their brief on page 20 that the last allegedly discriminatory act that Tassy identified occurred from before he sought EEO counseling occurred on May 3. Even after they said that in their brief, this was not a matter you brought up in your reply? I did not put it in my reply. I've just noticed it in reviewing the record. But let me explain why. The government then tries to conceal the allegation about July 30 by stating in footnote 2 on page 20 of its brief that the agency's decision, quote, included as claims and addressed two incidents that allegedly occurred after Tassy sought EEO counseling, unquote. They cite this very page. And in preparing for argument, I went to look at it and I realized, wait a minute, claim 7 is July 30, 19 days before August 18. Only one, not two of the claims occurred after Tassy sought EEO counseling. What does the July 30 incident relate to? Pardon? What is the July 30 incident? It's an incident where he states that management improperly was trying to impose a disciplinary action on him relating to the on-the-job training. So- Assuming for the sake of this argument, which is short, that you do have standing because you met the exhaustion requirements, speak to me about whether there was pervasive treatment to Mr. Tassy in the workplace. And while I'm asking a multiple question, tell me what was directed to him because of his protected characteristics. Well, there are a couple of important points on that. The evidence should not be reviewed in a piecemeal fashion on a motion for summary judgment. Instead, the total circumstances must be considered. In this case, there are multiple circumstances that make the incidents serious and harmful that give rise to a hostile environment claim. There is, first of all, the fact that the impact on Tassy's psychological well-being was such that he had to seek psychiatric help. Second of all, Tassy was new to the office and in a trainee position where being treated by the whim and caprice of his co-workers was extremely distressing and difficult for him. Third, the management refused to deal with his complaints. He went to them numerous times about lack of training and hostile treatment, and they refused to help him, leaving him helpless and isolated. Fourth, the co-workers shunned him. His own manager admitted in the tape-recorded conversation, people don't want to deal with you because they're afraid you'll complain about them under EEO. Fifth, they've failed and refused to provide Tassy with training. This court has held that that can be an element of a hostile work environment. Now, you may be aware there's a- What case is that where we found that lack of training can be used to prove a hostile working environment? Can you tell me the name of that case? Yes, it's a very unusual name. It's Saruj Balak. It's 816 Federal Appendix 536, and the court commented that the nondiscreet acts of discrimination could include lack of training. Now, there's not an analysis there, but it was stated that way, and our position is that lack of training should be treated under the continuing violation doctrine, which I also want to address, but I also want to point out in response to your question that the intense, protracted, and constant nature of the mistreatment of Tassy was acknowledged by his manager, the manager of the office, Anderson, when he, Anderson, told Tassy that Tassy had to have a tough skin, that the white inspectors had come at Anderson when he was a trainee, that they are going to come at you hard, that the people out there will tear you apart, and that they are going to come at you the way they came at me. Everything I read you is a quote from the manager of the office. These factors paint a terrifying portrait where Tassy was required to try to succeed with trainers who did not want to train him, but wanted to come at him and tear him apart, and where management, the manager of the office, acknowledged the harsh and hostile treatment, but expressly refused. In that tape recording, he refused to do anything about it. He told Tassy, you have to have a tough skin. You have to deal with this. And which of these complaints related to his, the characteristics that are protected under our statutory scheme? Well, all of them. It's also in that tape recording that Anderson told Tassy that he had been treated roughly. He, Anderson, when he had been a trainee in the office, that he was the only black inspector. Ironically, Anderson is black, but he refused to help Tassy. He left Tassy to twist in the wind. Now, the- Can I ask about the tape? Is it part of the record? I know that the district court considered it. Yes, and it's been filed with this court by whatever the procedure. I forget who we sent it to somebody, but yes, it's in this record. And- And you wanted to address, and I realize your time is limited, the continuing violation doctrine. I'd be interested in what you had to say about our decision in Shen and why it is- Yes. It doesn't apply in this context. Because, as your Honor knows, and I've also, of course, seen the decision written by Judge Sack, that's, I believe, the Gonzales v. Hastie case, that the continuing violation doctrine involves a distinction between what's referred to as discreet and nondiscreet acts. A failure to train, I submit, can fall into either category. On the one hand, the refusal to admit an employee to a training program may constitute a discreet act. On the other hand, the ongoing and repeated denial of training opportunities to an apprentice or to an aviation safety inspector in training may properly be deemed nondiscreet acts. The reason for this- Can you just tell us your best cases for that proposition? I have not found any cases. The only cases I've found are like I've said about Suruj Bali. There's a case called Langford that's in our brief where, I forget which judge, one of the district court judges said, it looks like, to me, a failure to training could be a continuing violation where it relates to an apprenticeship. And the reasoning is that the rationale, of course, under Justice Thomas's decision about what constitutes a continuing violation, it's where the individual act is not immediately apparent to the employee that this is a discrimination claim where I can sue. The employee only becomes aware over time. The first time you ask somebody, will you take me out for training today? They say no. You think, well, maybe they're busy. But as it piles up and as you learn that management is not going to help you about it, in effect, management endorses this, then it becomes something that the plaintiff becomes aware I have a claim. And of course, if there's a question about when the plaintiff became aware or should have become aware, that's a question for the jury. That should not be resolved on summary judgment. And one last comment on continuing violation is it really should be labeled the cumulative violation doctrine. What we're really talking about is when did the cumulative effect of the harmful actions and their discriminatory basis and management's approval of the actions, or at least allowing them to go on, when did all of that accumulate to make it apparent to the employee that he had a viable claim Tassie only gradually realized that he was being systematically excluded and it was only after he had made complaints and been rebuffed that he realized this was a policy or a practice or custom of the office that was not going to be changed. And the only other point I wanted to make, I will not go into in detail, is that the testimony about Anderson rubbing his arm and saying this has issues in the office, is that a reference to racial discrimination? What Mr. Tassie thought it was, and we submit that on a summary judgment motion, it cannot be decided against Mr. Tassie. You cannot accept the government's argument, oh, he was not talking about race. That's a question for the jury to decide when they hear this case. And you've reserved one minute of rebuttal time. Do you want to use it now? I think I already used most of it. I just want to also finally point out that Anderson in that tape recorded conversation acknowledged that Tassie's co-workers were afraid to approach him. This goes to your question that he was telling Tassie race is a problem here and you are being treated this way because of your race. He didn't use those words, but he said to Tassie, why would anybody want to be around you and risk having an EEO complaint filed against them? What else does that mean except that your co-workers are shunning you, they're refusing to train you, they're not dealing with you, they're making you miserable because of your race. And you've reserved one minute of rebuttal time. I do. Thank you. May it please the court. My name is Ekta Daria. I'm an assistant assistant U.S. attorney from the Eastern District of New York. Counsel, did the government misstate the record? The defendants misstate the record as counsel alleged when he was at the podium? No, your honor. On page A396, which is the final agency decision in the EEO portion of this action, there is an allegation that on July 30th, 2018, the complainant was removed from an on-the-job program. That is in there. However, on page A407, the complainant, that is Tassie, admits that that never actually occurred. It says the complainant clarified that he was not removed from the OTJ program, and it later goes on to say the complainant acknowledged that his supervisor, Mr. Soto's statement that he was never placed on an ODP was correct. Therefore, there was no action within that 45-day period, and the government has correctly characterized the record. There is no event in that 45-day period. With respect to the first argument that the government has made, that the district court correctly held that Tassie failed to exhaust his administrative remedies prior to bringing his disparate treatment claim for the alleged failure to train, as you know, Tassie was required to contact an EEO counselor within the 45-day period. In this record, it is undisputed that Tassie bore some responsibility to coordinate with his for the training that he needed. That is on page A511 and 512 of the record. So he asked to be trained many times, and the fact that it didn't happen is his fault? Correct, because he does not dispute that he has the responsibility to ask for training. Right, but if you keep asking and it doesn't happen, is it still your fault? Well, then he is. Tassie did not point to any events within that 45-day period in which he asked for training, nor did he point to any events during that 45-day period in which he was denied training. He generally asserts a blanket, I wasn't given training, this was an ongoing practice. He calls it a systematic practice, but he cannot point to a single incident in that event, and that is what makes this claim untimely. What about the argument that a failure to train is different than a, I didn't receive a promotion? I mean, it's not really discreet in a program like the one he was in, where he's supposed to be trained continuously over a period of time, so that we shouldn't be focused on the 45-day window in the same way that we would in the case of the Chin matter. Certainly. Under the continuing violation doctrine, the Chin Court, as well as the Supreme Court in Morgan, made clear that the complainant, the plaintiff, still needs to point to at least one action, one discriminatory act that occurred in the 45-day period. The continuing violation doctrine does not apply to a blanket ongoing policy or practice. It applies if one incident occurred in that 45-day window, and then it can be traced back to cover older periods. Here, Tassie has not pointed to a single incident that occurred in the 45-day period. He, therefore, cannot utilize a continuing violation doctrine to make his untimely claim for disparate treatment timely. In addition to that, the district court did correctly hold that the failure to train was a discreet act. Because, as the Supreme Court recognized in Morgan, and as this Court recognized in Chin, discreet acts are ones that are easy to identify and constitute separate, actionable, unlawful employment practices. And Tassie here has pointed to specific instances in which he was denied training. For example, he points to an instance in early 2017 when this colleague, Ray Melser, instead of taking him out to training, cursed at him. He also points to a specific three-month interval in early 2017 when Ray Melser allegedly did not take him to training. Those are discreet events that occurred one and a half years before he reached out to EEO and began this EEO action. But at some point, there are trainers that are specifically assigned to him. And if they don't approach him and say, come out with me, let's do some training, is that really a discreet act that he would be on notice of? It's just something that didn't happen while he was in the workplace. Tassie was not limited to only asking his assigned trainers for training. He was free to contact anyone in the office for training. And there was evidence in the record that other individuals in the office did reach out to him and did provide him training. Also, Tassie does say in the brief that he was somehow repeatedly refused, that there was a systematic refusal of training, but yet he cannot point to a single incident in that 45-day period, which he needs to do regardless of whether the continuing violation doctrine applies or doesn't apply. Second, while not addressed by the district court in its decision, Tassie did not establish a disparate treatment claim under the McDonnell-Douglas standard. He cannot prove two elements of his Prima Fasci case. One, that he suffered an adverse employment action, or two, that there was an inference of discrimination. He's not working there anymore. So whatever it is, I'm prepared to see an adverse employment action if he's no longer working at the office where he was working. Tassie never alleged that his termination or departure from the FAA was in any way related to the underlying failure to train in this case, in this record. Well, he says it in his lawsuit, that he left because he was treated badly by everyone, as counsel enumerated when he was at the podium, that they shunned him, that they weren't nice to him, whatever. But do we have to, do you need a direct line between what he alleges in the complaint and his not being there anymore? Yes, there needs- Some talismanic words that say, because of this, I left? There do not need to be specific, clear words, because of this, I left. Tassie, however, has brought a second EEO complaint that is separate from this action and unrelated to this action, where he's alleging constructive discharge from that later retirement from the FAA. That is wholly unrelated to the allegations he's making here. And he hasn't made those allegations in this proceeding. Correct. With respect to the adverse employment action, it must be noted that Tassie never addresses this issue, nor does he refute this issue in his briefs. A failure to train is not an adverse employment action because it did not materially change the terms and conditions of his employment. Well, he could never, he wasn't trained enough to pass the exam. Isn't that true? Staying at the same level is not enough to constitute an adverse employment action. He was never demoted. He was never removed from his job. He was never forced to transfer. His pay continued to increase every year. He was able to stay in the same position, and that is not enough to show an adverse employment action. Second, he cannot show his prima facie case because he cannot show that there was an inference of discrimination. Tassie did not point to any direct evidence of discrimination, nor did he point to any circumstantial evidence of discrimination. It is undisputed in this record that no one at the FAA ever said anything verbally to Tassie about his race, his color, or his national origin. And Tassie has not pointed to a single individual who is similarly situated, let alone one in which he can say was treated any differently. Well, his boss, Anderson, who was also black, made inferences that he was treated badly because of his race. And he understood because he said, I've been there. I was treated the same way. Anderson, as an international matter, is not a similarly situated individual because he does not have the same position and title as Tassie, which is required to show someone as similarly situated. With respect to the comments that Anderson made, they are essentially three things. One, he once rubbed his arm. He once said, you need tough skin. And he made some comments during a recording that Tassie recorded covertly in violation of FAA policy. In the instances where he touched his arm and he said tough skin, he never verbally said anything about race, color, or national origin during those conversations. Isn't it a fair inference to draw when he touches his arm that he's pointing to the black skin on his arm? Isn't that a fair inference? When viewed in the totality of the circumstances, a conversation when Anderson was not talking about race at all, or color, or national origin, where he was making no references to race, an instance where someone touches his arm is not enough to raise an inference of discrimination. The district court correctly made that conclusion. That sounds like we have to be willfully blind about what was going on in this workplace. He touches his arm and says, you have to really have a tough skin around here. What did that mean? Except that they don't treat blacks the same way they treat white people here. Anderson is someone who started in the same position as Tassie and was able to work his way up the ranks to become the manager of the office. He touted during his deposition that he made his way to the top because of the help of his Caucasian non-foreign colleagues who really took him under their wing. When he talked about the tough skin, which is a separate conversation than the conversation where he rubbed his arm, he explained at his deposition that the tough skin was about what it takes to become an ASI and to succeed in his position. There is no reasonable inference that a jury could make that one instance where he touched the skin but was not talking about anything race-related, and another instance where he talked about needing tough skin to become an ASI could lead to an inference of discrimination, especially coming from someone who was able to succeed in the position that he was in. What is your position? I mean, is the tape recording part of the record before us so that we should consider it? The tape recording was submitted as part of the record, but it was not mentioned in the 56.1 statement. That tape recording, if the court were to consider it, is a one and a half hour long conversation where Anderson talked to Tassi about what it took to become an ASI. It was essentially a pep talk where he was telling him what it required to become successful in his job. I have one more question. As I understand the way this training works, the plaintiff quickly passed level one of the training, and that's written in classroom instruction, and then level two, observation of inspectors in the field. He gets stuck at level three. That's the level at which he needed to perform the work himself while a trainer observed. Correct. So your position is that it was a series of discrete acts. That's the way we should think about... Assume for the moment that the record would support a reasonable jury in finding that no one would train him, which would completely block him from proceeding past level three, but that we should conceive of that as a series of discrete acts that happened to him rather than looking at it in a more systematic... This was an ongoing course of conduct. Yes. Tassie... It was clear to Tassie that he bore some responsibility to ask for training, and that was made clear to him in May of 2017, September of 2017, and again in April of 2018 when he signed a memorandum telling him to that effect he needed to seek out training. He also points to specific incidents in which he was not given the training he wanted, but it should be noted that even if the court were to see this as not a set of discrete acts, if the court were to try to see the continuing violation doctrine applied, he must still point to something that occurred within that 45-day period, some discriminatory act, and so even under the continuing violation doctrine, his claim would be untimely. Thank you. Thank you. We'll hear rebuttal. Thank you. Thank you. I just want to address the point... Wait, you know, if the presider will allow me, you made a very serious accusation that the government was deliberately misleading us. Do you stand by that accusation? Yes, that's what I want to address right now. I'm sorry, go ahead. In their brief footnote two on page 20, they stated that the agency decision, quote, included as claims and addressed two incidents that allegedly occurred after TASI sought EEO counseling, unquote. Now, they have previously said six of the incidents were more than 45 days before. Now, in this footnote, they're saying the other two were after. They're trying to push them all outside the window. Now, they have to admit, if you go to look at it, one of them was in the window. Now, they're making a new argument, and this is why I say they were hiding the ball, and frankly, it worked on me the first time around. I did not, until after preparing here, I did not, before doing my written reply, look back at it. When I do look back at it, he made an allegation about July 30, 2018, and they conceal that in their brief. Now, they have to admit, oh, yeah, it is in the window. Now, they're shifting and reading to you from later in the decision, page A407. But I have to tell you, it's another deceit, because she read that Mr. Tassi acknowledged that he was never placed on an ODP. But the same paragraph goes on to say, he stated that no other employee was threatened with an ODP, and that he was threatened with an ODP because of his protected classes. Now, is that a valid claim or not? That's not the question here. This is summary judgment. This is pretrial. The question is, did he make an allegation within the window? And he did. And the question is, is there evidence to support this allegation at summary judgment? Well, the only evidence at this point is his statement that this is what happened. His verified statement? Yes. And the ODP, it's a plan that sets goals, which he felt was being unfairly or threatened, being unfair, he was being unfairly threatened with. So I do stand by my assertion that their brief was erroneous, misleading. I don't want to overstate it, but it was not right. Well, you did state it as being deliberately misleading. I think you have to say it's deliberate. I mean, everybody knows July 30th is before August 18th, and how you could say six were before outside the 45-day window, which they were. But then to say the other two were after, it's just not true. So thank you. Thank you both. We'll take the matter under advisement.